# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Stella Thomas,                                     Case No. 19-cv-482 (ECT/TNL)

        Plaintiff,

v.                                                              **ORDER**

Wells Fargo Bank, N.A.,

        Defendant.

---

Stella Thomas, 3939 Colfax Avenue North, Minneapolis, MN 55412 (pro se Plaintiff);

Sean R. Somermeyer and Terran C. Chambers, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55401 (for Defendant).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Motion for Sanctions (ECF No. 134); Plaintiff's Motion for Sanctions Under Rule 11 (ECF No. 149); and Defendant's Motion to Modify Scheduling Order (ECF No 164). For the reasons set forth below, the Court will grant in part and deny in part Defendant's motion for sanctions and motion to modify the scheduling order and will deny Plaintiff's motion for sanctions.

## I. BACKGROUND

This litigation, which originated over two years ago with a fairly standard Complaint alleging employment discrimination (*see* ECF No. 1), has proceeded in an unconventional manner. The Court therefore will summarize the history of this case in order to provide context for its decisions.

1

### A.  The Original Suit

Plaintiff, then represented by counsel, filed suit on February 26, 2019.  (*Id.*) Defendant answered the Complaint (ECF No. 6) and a Pretrial Scheduling Order issued. (ECF No. 11.)

In September of 2019, the parties filed a joint motion for Plaintiff to file an amended complaint.  (ECF No. 17.)  This motion stated that Plaintiff's employment was terminated by Defendant on September 6, 2019, and sought to amend the Complaint to "include an allegation of wrongful termination in retaliation to her complaints for discriminatory treatment she received while employed."  (*Id.* ¶ 2.)  While the Court granted this motion (*see* ECF No. 20),  Plaintiff never filed an amended complaint by the November 4, 2019 deadline as directed.  (*See id.*)  During discovery, Defendant produced Plaintiff's payroll reports, self-evaluations, and performance reviews, as well as over 100 pages of documents related to the termination of her employment.  (ECF No. 124 ¶¶ 5-6, 10.) These documents were all served on Plaintiff after her termination, and the documents relating to her termination were served after Plaintiff served a second set of discovery requests on Defendant.  (*See id.* ¶¶ 5-7, 10; *see also* ECF No. 124-3 & 124-4.)

On November 21, 2019, Plaintiff's counsel filed a motion to withdraw their representation of Plaintiff, citing that "professional considerations require termination of their representation."  (ECF No. 22 at 1.)  The Court denied this motion without prejudice, finding that the record and arguments counsel presented at that time did not establish good cause to withdraw under Local Rule 83.7.  (ECF No. 28.)  The Court, however, recognized that there was a "dispute between Counsel and Plaintiff regarding certain tactical decisions

in this case" and encouraged Plaintiff and counsel to continue working together to resolve disputes. (*Id.* at 3.) Concluding that while "the attorney-client relationship appears salvageable, and all parties would benefit from Counsel's continued participation in the matter," the Court also acknowledged that "[c]ircumstances may change and, if the attorney-client relationship deteriorates further, it may no longer be possible for Counsel to represent Plaintiff." (*Id.*)

### B. "Settlement" and Re-Opening of the Case

On January 29, 2020, the parties appeared for a settlement conference in this matter. (ECF No. 53.) The Court summarized this settlement conference in an Order it issued in March 2020:

> After more than nine hours of discussions, [the parties] reached an agreement that would resolve all outstanding claims in the entire matter. The Court memorialized the material terms of the settlement on the record. The Court then informed the parties that if they agreed to those terms, the Court would enforce the material terms as the full and final settlement in this case. Each party agreed to the material terms as described by the Court and agreed to be bound by the settlement. The Court directed the parties to prepare settlement documents and submit a stipulation for dismissal once those documents had been finalized.

(ECF No. 54 at 1.)

On March 3, 2020, Plaintiff's counsel contacted the Court to state that while they had sent finalized settlement documents to Plaintiff, they had not been able to contact her by any means and she had not executed the final settlement agreement. (*Id.*) The Court encouraged Plaintiff's counsel "to make their best efforts to locate [Plaintiff] and arrange for her to sign the settlement documents," because the parties had entered into an agreement

on the record and the Court sought to "enforce those terms as a binding agreement between the parties." (*Id.* at 2.)  The Court further stated that if Plaintiff did not sign the settlement documents within 14 days, then "the parties should take whatever action they deem necessary to finalize the agreement reached in this matter, including filing a motion to enforce the settlement agreement." (*Id.*)

Defendant filed a motion to enforce the settlement agreement on April 7, 2020. (ECF No. 59.)  In a stipulation filed by the parties soon thereafter, the parties stated that Plaintiff had objected to certain provisions of the written settlement agreement being negotiated between the parties and wished to "resolve the disputes regarding material terms with [the undersigned] before proceeding with the motion to enforce settlement." (ECF No. 73 ¶¶ 4, 6.)  The disputes regarding the specific terms of the settlement agreement were resolved on the record at a status conference held on May 18, 2020.  (ECF No. 78.) Defendant withdrew its motion to enforce the settlement on May 27, 2020, stating that Plaintiff had executed the settlement agreement.  (ECF No. 79.)

On June 30, 2020, the parties executed and filed a stipulation of dismissal.  (ECF No. 80.)  The matter was dismissed with prejudice.  (ECF No. 82.)

On July 20, 2020, Plaintiff filed a "Motion for Relief from Order Dismissing Case" on the basis that Plaintiff's then-counsel did not have the authority to stipulate to dismiss the case.  (ECF No. 83.)  According to Plaintiff's counsel, while Plaintiff had signed a settlement agreement and release in this matter on May 22, 2020, the release included a 15-day recission provision.  (ECF No. 85 ¶ 2.)  Plaintiff's counsel provided authority for defense counsel to file the stipulation of dismissal.  (*Id.* ¶ 5.)  However, unbeknownst to

Plaintiff's counsel, Plaintiff had rescinded her Release of Claims on June 5, 2020. (*Id.* ¶ 8.)

On September 10, 2020, the Honorable Eric C. Tostrud, District Judge for the United States District Court for the District of Minnesota, granted Plaintiff's motion and directed that this matter be reopened. (ECF No. 109.) Judge Tostrud also granted Fiebiger Law's Motion to Withdraw as Plaintiff's Counsel (ECF No. 87). (*Id.*) Plaintiff now represents herself pro se.

### C.  The Court Attempts to Streamline Remaining Litigation

At the time of the settlement conference in January of 2020, little fact discovery remained in this matter. (*See generally* ECF No. 50.) The discovery period had been extended until April 15, 2020, for the sole purpose of conducting seven depositions. (*Id.* ¶ 1(b).) In order to streamline the litigation of the re-opened case, the Court ordered the parties to meet and confer for the purpose of determining what discovery remained and the time necessary to complete that discovery. (ECF No. 115 at 2-3.) The Court cautioned that "while this case has been re-opened and there has been a change in Plaintiff's representation status, it will not allow this case to be completely re-litigated. It anticipates and expects that the outstanding discovery proposed by the parties will not materially differ from" what had previously been outlined. (*Id.* at 2.)

The parties met and conferred on November 2, 2020. (*See* ECF No. 117.) They agreed that no new additional written discovery was required, requested to supplement a limited number of answers to existing interrogatories, and agreed that the "only deposition left to be completed is that of [Plaintiff]." (*Id.* at 1.) Defendant indicated it was planning

on filing a dispositive motion.  (*Id.* at 2.)  On December 3, 2020, the Court issued a Second Amended Pretrial Scheduling Order memorializing the outlined agreement of the parties. (ECF No. 120.)  This Order kept the fact discovery deadline as January 15, 2020, with the exceptions of supplementing existing Interrogatories (deadline of December 23, 2020) and deposing Plaintiff (deadline of January 29, 2021).  (*Id.* ¶ 1(b)-(c).)

**D.  Plaintiff's Second Suit and Consolidation**

Meanwhile, notwithstanding the parties' agreement that little fact discovery remained in this matter, Plaintiff filed a separate Complaint against Defendant on November 17, 2020.  (ECF No. 1 in *Stella Thomas v. Wells Fargo*, No. 20-cv-2346 (ECT/TNL) (D. Minn.) (hereinafter *Thomas II*).)  The Complaint in *Thomas II* is similar to the original Complaint in this action, alleging charges of discrimination, though it also includes allegations relating to Plaintiff's termination, a specific promotion, and denial of overtime pay.[1]  (*Compare* ECF No. 1 *with* ECF No. 1. in *Thomas II*.)  On December 28, 2020 Defendant moved to consolidate the two actions.  (ECF No. 121.)  A hearing was held before Judge Tostrud on this motion on January 11, 2021.  (ECF No. 129.)  Judge Tostrud did not address the merits of the motion because Plaintiff was not properly served. (*See id.*; *see also* ECF No. 138-2 at 2.)  On January 14, 2021, Plaintiff also filed motions to consolidate these two actions.  (ECF No. 131; ECF No. 8 in *Thomas II*.)  In her memoranda in support of her motions, Plaintiff stated that she had never opposed consolidating the two cases.  (ECF No. 132 at 2; ECF No. 9 at 2 in *Thomas II*.)

---

[1] *See infra* Section I(F) for further discussion of these Complaints.

Judge Tostrud granted these three motions to consolidate on January 21, 2021. (ECF No. 141; ECF No. 11 in *Thomas II*.)  Plaintiff was ordered to file a consolidated amended complaint in this matter on or before February 4, 2021, and the Clerk of Court was ordered to administratively close *Thomas II*. (*Id.*)  Plaintiff filed an Amended Complaint in this action on February 4, 2021.  (ECF No. 147.)

Though Plaintiff eventually filed her own motions to consolidate, she was cagey with defense counsel during the meet and confer process prior to Defendant seeking consolidation of the two cases.  On December 4, 2020, over three weeks before filing the motion, defense counsel called Plaintiff and asked her about consolidating the two matters. (ECF No. 138 ¶ 3.)   Plaintiff said she was "potentially" interested in consolidation but needed to seek advice of counsel first.  (*Id.*)   Defense counsel emailed Plaintiff on December 7, following-up on the earlier phone call.  (ECF No. 138-1 at 5.) Counsel asked Plaintiff to reply by December 11 indicating whether or not she would consent to consolidating the two cases, and stated that should she not agree, Defendant would file a motion.  (*Id.*)   Hearing no response by the 11th, counsel emailed Plaintiff again on December 16, asking, "Can you confirm that you will not agree to consolidate cases?"  (*Id.* at 4.)  On December 17, defense counsel forwarded a scheduling email to Plaintiff and stated, "If you are interested in stipulating to [the motion to consolidate] please let me know ASAP to avoid having to go through with a motion and a hearing."  (*Id.* at 7.)

Plaintiff responded the same day, "I'm interested in consolidating my cases unless an attorney tells me otherwise." (*Id.* at 4.)  She stated that she was working with the Federal Bar Association's Pro Se Project and waiting to hear back from the coordinator who was

trying to find an attorney to give her advice on this issue. [2]  (*Id.*)  Plaintiff also stated that if the Court consolidated the two cases, she would be asking the Court for additional time to complete discovery in the second case.  (*Id.*)  Defense counsel responded the same day that she was noticing a motion to consolidate.  (*Id.*)

Following the hearing before Judge Tostrud on January 11, 2021, defense counsel contacted Plaintiff again by phone and email, asking if she would agree to consolidate the two cases.  (ECF No. 138 ¶ 9; ECF No. 138-2 at 5.)  During the phone call with counsel, Plaintiff stated she would be willing to consolidate the two cases if a new pretrial scheduling order was issued and agreed to provide a proposed schedule.  (*Id.*)

In response to an email memorializing the January 11 conversation, Plaintiff emailed defense counsel the following message:

> As I stated on 12/4 over the phone and on 12/17 via email, I wasn't opposed to consolidating my two cases.  I've never been opposed to doing so, but since you already filled [sic] a motion with the court I think it's best that I file my response and let Judge Tostrud decide the path moving forward.

(ECF No. 138-2 at 8.)  Defense counsel replied in part stating that she would be willing to draft a stipulation to consolidate the two cases.  (*Id.* at 7.)  Plaintiff did not respond and did not provide a proposed discovery schedule.  (ECF No. 138 ¶ 12.)  Instead, Plaintiff filed her own motions to consolidate.

### E.  Deposition of Plaintiff

Plaintiff was deposed by Defendant on January 15, 2021, one day after she filed her

---

[2] The record supports Plaintiff's statement that she was working with the Federal Bar Association's Pro Se Project. (*See* ECF No. 6 in *Thomas II*.)

motions to consolidate her two Complaints. (*Id.* ¶ 13; *see* ECF No. 131; ECF No. 8 in *Thomas II*.) At this deposition, Plaintiff refused to testify about any claims or allegations she believed were related to the Complaint filed in *Thomas II*. (*See* ECF No. 138-2 at 9-13 (hereinafter "Depo. Tr.").)

### F.  The Complaints

The current disputes before the Court require a brief summary of the Complaints filed in this action and *Thomas II*.

### 1.  Original Complaint

In the original Complaint, Plaintiff alleged that Defendant discriminated against her on the basis of her sex and race and that Defendant retaliated against Plaintiff when she complained of discriminatory treatment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 200e, *et seq*. (hereinafter "Title VII"); and also that Defendant paid Plaintiff less than male employees for the same work in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (hereinafter "Equal Pay Act"). (ECF No. 1 ¶¶ 16-19.)

Plaintiff alleged that Defendant was not given "Final Risk Review points" while serving as an Underwriter in Defendant's Mortgage Department in 2017, and that those points were instead assigned to a white male Underwriter. (*Id.* ¶ 2.) She claimed that she was discriminated against on the basis of her sex and race and that similarly situated Underwriters of a different race and sex were accorded more favorable treatment. (*Id.* ¶ 5.) According to the Complaint, after leaving this position due to the differential treatment and lack of appreciable changes, Plaintiff became a Credit Analyst for Defendant (which resulted in a "substantial" loss of income) and was given a negative performance review in

retaliation for complaining of the discriminatory treatment she faced while serving as an Underwriter. (*Id.* ¶¶ 6-8.) Plaintiff also alleged she was further retaliated against for having complained of the treatment of a black male employee by being excluded from getting new files, being denied access to a training program, and not receiving a bonus which was paid to similarly situated white colleagues. (*Id.* ¶¶ 9-12.) Plaintiff alleged "[o]ther male and female white employees . . . were given promotions to jobs for which they did not meet the minimum requirements while [Plaintiff] was denied even the opportunity to interview for the open positions, in retaliation for her having previously complained of discrimination." (*Id.* ¶ 13.)

### 2. The Complaint in *Thomas II*

In this Complaint, Plaintiff alleged that from January 1, 2019 until the termination of her employment on September 6, 2019, Defendant discriminated against her on the basis of her race, national origin, and gender and that Defendant retaliated against Plaintiff when Plaintiff complained of discriminatory treatment in violation of Title VII. (*See generally* ECF No. 1 in *Thomas II*.) Plaintiff also alleged she was not paid overtime. (*Id.*)

Plaintiff again alleged she was discriminated against on the basis of her race and sex when other white employees were hired for positions for which they were not qualified while she was denied the opportunity to apply. (*Id.* ¶ 10.) She also alleged that she was denied a promotion to an Operational Risk Consultant 3 position she interviewed for because she had complained of Defendant's discriminatory hiring practices (*Id.* ¶ 11); that she was wrongfully accused of fraudulent behavior and fired for being a victim of domestic violence and in retaliation for complaining about discriminatory hiring practices and filing

her original suit (*Id.* ¶ 12); and that she was denied overtime pay despite "being required to pick up additional opportunities." (*Id.* ¶ 13.)

### 3. Comparing the Two Original Complaints

Plaintiff claims that these two Complaints are drastically different due to the different departments she worked in and different promotions she was denied. (ECF No. 150 at 6.) Plaintiff's original Complaint, however, does not mention which specific roles she was not promoted to, only stating that other employees "were given promotions to jobs for which they did not meet the minimum requirements." (ECF No. 1 ¶ 13.) The only specific promotion cited in the *Thomas II* Complaint was a promotion to become an Operational Risk Consultant 3. (ECF No. 1 ¶ 11 in *Thomas II*.) Similarly, none of the three Complaints Plaintiff has filed mentions the Small Business Administration-SBA or Middle Market Department, which Plaintiff mentions in her memorandum in support of her motion for sanctions. (*Compare* ECF Nos. 1, 147 *and* ECF No. 1 in *Thomas II with* ECF No. 150 at 6.)

The Complaint in *Thomas II* does cover approximately seven additional months of Plaintiff's employment, until her termination on September 6, 2019. (*Compare* ECF No. 1 (pleading allegations beginning in 2017 and filed February 26, 2019) *with* ECF No. 1 in *Thomas II* (pleading allegations from January 1 through September 6, 2019).) Though Plaintiff's Complaint in *Thomas II* does assert additional claims of discrimination, the causes of action are largely the same and the parties are the same. Plaintiff also alleges a nearly identical allegation in the original Complaint in this action and the Complaint in *Thomas II*: that she was passed up for unspecified promotions in favor of white employees

who lacked the minimum requirements for the role.  (*Compare* ECF No. 1 ¶ 13 ("Other male and female white employees at Wells Fargo were given promotions to jobs for which they did not meet the minimum requirements while Ms. Thomas was denied even the opportunity to interview for the open positions, in retaliation for having previously complained of discrimination.") *with* ECF No. 1 ¶ 10 in *Thomas II* ("I was discriminated against based on my race and sex when other male and female white employees at Wells Fargo were hired for positions which they did not meet the minimum requirements while I was denied even the opportunity to interview for the open positions, although I was already performing the duties for the vacant positions.").)

### 4.  The Amended Complaint

In ordering that this action and *Thomas II* be consolidated, Judge Tostrud found "that these actions involve a common question of law or fact" pursuant to Federal Rule of Civil Procedure Rule 42(a).  (*See, e.g.*, ECF No. 141 at 1.)  Plaintiff was ordered to file a consolidated amended complaint "that asserts all of her claims against Defendant."  (ECF No. 141 at 3.)

Plaintiff complied and filed her Amended Complaint in this action on February 4, 2021.  (ECF No. 147.)  In this now operative Amended Complaint, Plaintiff alleges that Defendant discriminated against her on the basis of her sex, race, and national origin and that Defendant retaliated against Plaintiff when she complained of discriminatory treatment in violation of Title VII; that Defendant paid Plaintiff less than male employees for the same work in violation of the Equal Pay Act; and that she was not paid overtime for required work.  (*See generally* ECF No. 147.)  This Amended Complaint combines the

factual allegations of the original Complaint in this action and the Complaint in *Thomas II*.
(*Compare* ECF No. 147 ¶¶ 10-23, 25-27 *with* ECF No. 1 ¶¶ 1-14 *and* ECF No. 1 ¶¶ 10-13
in *Thomas II*.) Plaintiff also added that she was discriminated against on the basis of her
race and sex when she was denied the opportunity to interview for open positions while
working as a Credit Analyst 2 in 2019.[3] (ECF No. 147 ¶ 24.) Plaintiff alleges other white
male and female employees were hired for those positions even though they did not meet
the minimum requirements and could not answer interview questions. (*Id.*)

## II. MOTIONS FOR SANCTIONS

### A. Defendant's Motion for Sanctions

Defendant moves to sanction Plaintiff pursuant to Federal Rules of Civil Procedure
30, 37, and 41, arguing that it is forced to depose her a second time because she "refused
to testify in her deposition regarding any topic she deemed pertaining to the second lawsuit
on the grounds that they had not yet been consolidated." (ECF No. 137 at 1.) Defendant
asks the Court to dismiss the allegations originally asserted by Plaintiff in *Thomas II* or, in
the alternative, to compel Plaintiff to attend a second deposition on a date certain at her
own expense. (*Id.* at 12-13.) Plaintiff did not file a response to Defendant's motion.[4]

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to
any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P.

---

[3] It is unclear if this specific allegation is new. As the Court noted above, *see Supra* Section I(F)(3), both the
original Complaint in this action and the Complaint in *Thomas II* included, without further specificity, that Plaintiff
was passed up for unspecified promotions in favor of white employees who lacked the minimum requirements and
that she was denied the chance to interview for those positions. None of the three Complaints detail the specific
period of time that Plaintiff held the position of Credit Analyst 2.
[4] Plaintiff did, however, file a motion for sanctions under Rule 11 on February 5, 2021. (*See* ECF No. 149.) In
many ways, Plaintiff's motion appears to be an untimely response to Defendant's motion. The Court discusses this
further below. *See infra* Section II(B).

26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*  One way of gathering discovery is through depositions, where "[t]he 'broad scope of discovery applies.'" *Walls v. Starks*, No. 4:19-cv-398-DPM, 2020 WL 6675632, at \*2 (E.D. Ark. Nov. 12, 2020) (quoting *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 579 (D. S.D. 2006)).

Federal Rule of Civil Procedure 30 governs oral depositions.  Absent a stipulation or court order, depositions are "limited to one day of 7 hours." Fed. R. Civ. P. 30(d)(1). "An objection at the time of the examination," including an objection regarding the evidence, "must be noted on the record, *but the examination still proceeds; the testimony is taken subject to any objection.*"  Fed. R. Civ. P. 30(c)(2) (emphasis added).  "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court" or to present a motion to terminate or limit the deposition under Rule 30(d)(3).  *Id.* Such a motion can be made only on the grounds that the deposition is "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or  party." Fed. R. Civ. P. 30(d)(3)(A).  Any "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).  A party may move for an order compelling disclosure if "a deponent fails to answer a question asked under Rule 30." Fed. R. Civ. P. 37(a)(3)(B)(i).

During her deposition, Plaintiff stated multiple times that she would not answer questions that she determined to be related to the allegations detailed in her Complaint in *Thomas II* on the basis that Judge Tostrud had not yet ruled on the motions to consolidate.

14

(*See* Depo. Tr. 149:25-150:3; 150:7-9; 151:8-12; 152:3-6; 152:13-21; 152:25-153:1 & 153:19-20.)  This was improper.  Plaintiff was welcome to object to the line of questioning pursuant to Rule 30.  Plaintiff, however, should have answered those questions, as pending motions to consolidate are not one of three narrow circumstances where a deponent can be instructed not to answer. [5]  *See* Fed. R. Civ. P. 30(c)(2).  The Court finds that Plaintiff impeded her deposition, and thus will order that her deposition be re-opened so that Defendant may fairly examine her.  *See* Fed. R. Civ. P. 30(d)(1).

Plaintiff's conduct also supports sanctions.  "The court may impose an appropriate sanction—including the reasonable expenses of attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).  "Courts have broad discretion in imposing and fashioning sanctions" under this rule.  *Korbel v. Extendicare Health Servs., Inc.*, No. 13-cv-2640 (SRN/SER), 2015 WL 13651194, at *10 (D. Minn. Jan. 22, 2015) (citing *Craig v. St. Anthony's Medical Ctr.*, 384 Fed. App'x 531, 533 (8th Cir. 2010)).  Considering the prejudice to Defendant and the costs of having to re-depose Plaintiff, the Court shall order monetary sanctions in the amount of $75.

The Court denies Defendant's motion to the extent it requests fees and costs pursuant to Rule 37.  Rule 37 mandates the awarding of "reasonable expenses" absent certain exceptions.  Fed. R. Civ. P. 37(a)(5)(A).  This award, however, is only mandatory

---

[5] The Court notes that at one point, Plaintiff asks to suspend the deposition to bring a motion before the Court.  (*See* Depo. Tr. 152:3-6 ("I would like to stop so I can file a motion with the Court to ask you not to ask me questions regarding my second action until we get an order about consolidation.").)  Plaintiff never brought such a motion pursuant to Rule 30(d)(3).  Further, the record is devoid of any evidence that there were appropriate grounds to bring such a motion.  *See* Fed R. Civ. P. 30(d)(3)(A).

if the court grants a motion to compel under Rule 37. *See id.* As this motion was one for sanctions, the Court finds the award of sanctions pursuant to Plaintiff's Rule 30 violations appropriate in this instance.

The Court also denies Defendant's request to dismiss the allegations originally pleaded in *Thomas II.* The district court has "a large measure of discretion in deciding what sanctions are appropriate for misconduct." *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260 (8th Cir. 1997). The Eight Circuit has "repeatedly stressed that the sanction imposed by the district court must be proportionate to the litigant's transgression and that dismissal with prejudice is an extreme sanction and should be used only in cases of willful disobedience of a court order or continued or persistent failure to prosecute a complaint." *Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008) (quotations omitted). The Court may dismiss a case "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order." Fed. R. Civ. P. 41(b); *see also Holly v. Anderson*, 467 F.3d 1120, 1121 (8th Cir. 2006). The Court does not believe recommending dismissal of Plaintiff's claims originally outlined in *Thomas II* is appropriate at this time. The Court advises Plaintiff, however, that if she fails to comply with any provision of this Order, other Court Orders, or applicable rules or law, the Court may well recommend this action's dismissal in the future. *See* Fed. R. Civ. P. 41(b); Fed. R. Civ. P. 37(b)(2)(A)(v).

### B. Plaintiff's Motion for Sanctions

On February 5, 2021, Plaintiff filed her Motion for Sanctions Under Rule 11, asking the Court to "strike defendant's motion for sanctions and sanction the defendant and their attorneys pursuant to Rule 11." (ECF No. 149 at 1.) Plaintiff argues that Defendant made

false accusations in its motion for sanctions and filed the motion "based on a frivolous legal position." (ECF No. 150 at 1.)

Rule 11 requires an attorney of record or unrepresented party to sign every pleading, motion, or other paper and certify that: the paper is being presented for a proper purpose; it was warranted by existing law or nonfrivolous arguments for modifying existing law; any factual contentions have evidentiary support; and any denials of factual contentions are warranted or reasonably based on belief or lack of evidence. Fed. R. Civ. P. 11(b). The Court may sanction an attorney or party who violates this rule. Fed. R. Civ. P. 11(c).

The party seeking Rule 11 sanctions must serve the motion on the appropriate person 21 days before filing it so that person may have an opportunity to correct or withdraw the challenged claim or paper. *See* Fed. R. Civ. P. 11(c)(2). "These notice requirements 'are intended to be strictly enforced.'" *Mehralian v. Parkland Estates Homeowner Ass'n*, No. 20-cv-855 (NEB/HB), 2020 WL 6144665, at *6 (D. Minn. Aug. 24, 2020) (quoting *Mortice v. Providian Fin. Corp.*, 283 F. Supp. 2d 1084, 1087 (D. Minn. 2003)), *aff'd*, 2021 WL 1541351 (8th Cir. Feb. 17, 2021).

Plaintiff's own statements and subsequent actions reveal a knowing violation of the safe harbor provision of Rule 11. On February 1, 2021, Plaintiff sent the following e-mail to the Court:

> Dear Judge,
>
> On 1/21/21, the defendant filed a motion to dismiss my second action with prejudice and for sanctions. Today, I served the defendant's attorney a motion for sanctions under Rule 11.

> Under the Safe Harbor rule, I'm required to give the defendant 21 days to withdraw or correct their frivolous motion prior to filing my Motion with the court.
>
> I respectfully ask that a ruling on the defendant's pending motion is not made until the 21 days have lapsed and I've had a chance to file my motion if the defendant does not withdraw or correct their frivolous motion.

(ECF No. 148 at 1.)  Defendant, however, did not wait 21 days to file her motion, and instead filed her motion four days later on February 5, 2021.

The Court's review of the record, including Plaintiff's motion and supporting memorandum, suggest that perhaps Plaintiff was trying to use her motion as a way to respond to Defendant's motion for sanctions.  Defendant's motion was filed on January 21, 2021, meaning the deadline for Plaintiff to respond was January 28, 2021.  *See* D. Minn. LR 7.1(b)(2).  Plaintiff cannot, however, cure one procedural defect with another.[6]  The Court will deny this motion as Plaintiff did not provide sufficient notice to Defendant pursuant to Rule 11.

Further, even if Plaintiff had waited the obligatory 21 days before filing her motion, the Court would still deny the motion on the merits.  The record is devoid of evidence that Defendant's motion for sanctions lacked a legal basis or that the factual contentions made by Defendant in its motion and supporting documents lack evidentiary support.  As discussed at length above in the legal analysis of Defendant's motion for sanctions, *see*

---

[6] The Court reminds Plaintiff that her pro se status does not alleviate her of the responsibility to comply with all appliable rules, laws, and the like in this case.  *See, e.g.*, *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("[P]ro se litigants are not excused from failing to comply with substantive and procedural law.").  Plaintiff's actions and communications with the Court throughout this case demonstrate that she is aware of the Federal Rules of Civil Procedure and other laws.  (*See generally, e.g.*, ECF No. 148; ECF No. 150.)

*supra* Section II(A), Plaintiff's actions violated Rule 30(b)(2) and thus Defendant's motion does not amount to sanctionable conduct under Rule 11. *See* Fed. R. Civ. P. 11(b)(2).

The Court also finds that the factual contentions made by Defendant in its pleadings do not violate Rule 11. *See* Fed. R. Civ. P. 11(b)(3). While the Court declines to analyze each and every claim made by Plaintiff in her motion, it will highlight factual contentions made in Defendant's motion for sanctions and supporting documents, which are the documents Plaintiff's motion attacks. (*See* ECF No. 149.)

Defendant's motion for sanctions focuses largely on Plaintiff's unwillingness to provide deposition testimony on certain topics under the theory that there were pending motions to consolidate before the Court. (*See generally* ECF No. 137.) Defendant provides background for this disagreement in the context of Plaintiff's vexatious actions throughout the case, focusing on the Complaint filed in this matter and the Complaint filed in *Thomas II*; a disagreement between the parties on whether Plaintiff agreed to consolidate the two cases; and previous cancellations of Plaintiff's deposition. (*Id.*)

First, the parties cite to similar e-mail communications in their respective motions for sanctions as it relates to the dispute over the consolidation. (*Compare, e.g.*, ECF Nos. 138-1 at 3-7 *and* 138-2 at 6-8 *with* ECF Nos. 151, 151-12, *and* 151-13.) These communications were further discussed in the background section of this Order. *See supra* Section I(D). These e-mails and Plaintiff's subsequent pleadings belie Plaintiff's position that she had agreed to consolidate this case with *Thomas II* prior to Defendant filing its motion to consolidate. While it is true that Plaintiff never flatly *refused* to consolidate the two matters, the equivocal e-mail communications from Plaintiff suggest her agreement to

consolidate was conditional upon her securing the advice of legal counsel and/or a modification of the Second Amended Pretrial Scheduling Order.  (*See also* ECF No. 150 at 4 ("As stated several times, I was never against the consolidation of my two cases, *but* we couldn't agree on a new scheduling order . . . . ) (emphasis added).)

The record also supports Defendant's factual assertions regarding the similarity of the Complaints filed in this case and *Thomas II* (*Compare* ECF No. 1 *with* ECF No. 1 in *Thomas II*); Plaintiff's failure to amend the Complaint in 2019 to add claims relating to her termination (*see* ECF No. 17 (joint motion agreeing to add these claims); ECF No. 20 (Order granting motion and giving Plaintiff until November 4, 2019 to file an amended complaint)); Plaintiff's failure to provide her medical records to Defendant absent a motion to compel (*see, e.g.*, ECF No. 33 (affidavit detailing, along with attached exhibits, the six months Defendant worked on obtaining Plaintiff's medical records in discovery); ECF No. 49 (Minutes memorializing the Court's Order for Plaintiff to produce all medical records relating to her mental health)); and the cancellation of previous depositions of Plaintiff. (*See* ECF No. 33-1 at 8 (cancelling October 31, 2019 deposition); ECF No. 153-1 at 13 (postponing December 13, 2019 deposition); *Id.* at 17 (postponing November 9, 2020 deposition); ECF No. 151-15 at 6 (stating unavailability for deposition noticed for January 28, 2021).)  The Court's review of additional factual contentions made in Defendant's motion finds that they also have evidentiary support.

In sum, Defendant has provided detailed evidentiary support for the factual contentions made in its motion for sanctions.  While Plaintiff may disagree with Defendant's arguments and object to defense counsel's interpretation of her statements, the

Court believes that as far as this motion is concerned, the documents speak for themselves. In addition to violating the safe harbor provision of Rule 11, Plaintiff's motion lacks merit and is denied. The record of Plaintiff's vexatious tactics in this litigation are much more the stuff of Rule 11 than the transference Plaintiff has attempted by moving for this meritless Rule 11 sanction against Defendant.

### III. MOTION TO MODIFY SCHEDULING ORDER

Defendant moves to modify the operative Second Amended Pretrial Scheduling Order to extend the dispositive motion deadline 30 days following Plaintiff's rescheduled deposition. (ECF No. 166 at 5.) Plaintiff counters that the Second Amended Pretrial Scheduling Order is not applicable to the "new" consolidated case and that the Court should enter a new scheduling order "providing additional time for the parties to complete factual discovery and submit particular issues to the court for consideration." (ECF No. 170 at 2.)

Rule 16(b) provides that the scheduling order set by a court "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (quotation omitted). "If the court is satisfied that the movant was diligent, it will also generally consider possible prejudice to the nonmovant." *Shank v. Carleton College*, 329 F.R.D. 610, 614 (D. Minn. 2019).

The Court will grant Defendant's motion in part and deny it in part. Defendant has shown good cause for a modification of the operative scheduling order; because an Amended Complaint has been filed, however, the Court agrees with Plaintiff that other

deadlines should also be amended. "It is well-established that an amended complaint supercedes [sic] an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (citation omitted). Further, while "consolidation is permitted as a matter of convenience and economy in administration" it does not "merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Hall v. Hall*, 138 S. Ct. 1118, 1127 (2018) (quotation omitted); *see also Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*, 580 F.3d 755, 769 (8th Cir. 2009) ("A consolidated case retains its independent status . . . ." (quotation omitted)).

Plaintiff will be given time to develop the claims outlined in the Amended Complaint through discovery. As Defendant has pointed out, however, it has already produced Plaintiff's payroll records, evaluations, and documents relating to Plaintiff's termination. (*See* ECF No. 124 ¶¶ 5-6, 10.) A lengthy discovery period is not necessary to ensure "the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. The Court therefore will modify the scheduling order to set the following deadlines:

- Fact discovery shall be commenced in time to be completed on or before 60 days from the date of this Order;[7]

- Likewise, any non-dispositive motions shall be filed and served on or before 60 days from the date of this Order; and

- The remaining deadlines in this matter will be reset accordingly.

---

[7] Should the parties seek to exceed the number of Interrogatories pursuant to Rule 33(a), the parties may seek leave to do so.

The Court will issue a Third Amended Pretrial Scheduling Order memorializing these deadlines.

In conclusion, the forthcoming Third Amended Pretrial Scheduling Order will allow the parties to conduct additional discovery to develop the claims outlined in the Amended Complaint. As previously intimated by this Court, however, Plaintiff will not be allowed to re-litigate completely her original claims. (*See* Order, ECF No. 115 at 2 (stating that while the case has been reopened "the outstanding discovery proposed by the parties will not materially differ" from what remained in January of 2020.).)

Some things have since changed, but the sentiments of the Court's December 2020 Order remain the same. While Plaintiff has filed an Amended Complaint that largely incorporates claims outlined in the Complaint in *Thomas II*, the addition of Plaintiff's claims related to her termination and other facts pleaded do not demand a protracted fact discovery period, as the parties have already exchanged voluminous discovery materials regarding Plaintiff's employment and termination from Wells Fargo. While the Court will allow for additional fact discovery, it expects that this discovery will be brief and efficient. The Court expects the parties to act accordingly.

## IV. ORDER

Therefore, based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Sanctions (ECF No. 134) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  Defendant shall have the opportunity to re-depose Plaintiff. This deposition shall occur at a date and time of the parties' choosing in accordance with the scheduling deadlines in this case.

    b.  Plaintiff shall pay Defendant $75 pursuant to Fed. R. Civ. P. 30(d)(2).

    c.  Defendant's request for attorneys' fees is denied.

2. Plaintiff's Motion for Sanctions Under Rule 11 (ECF No. 149) is **DENIED**.

3. Defendant's Motion to Modify Scheduling Order (ECF No 164) is **GRANTED IN PART** and **DENIED IN PART** as specifically outlined herein.

4. A Third Amended Pretrial Scheduling Order shall issue.

5. All prior consistent orders remain in full force and effect.

6. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.


Dated: June __9__, 2021

                                *s/Tony N. Leung*
                                Tony N. Leung
                                United States Magistrate Judge
                                District of Minnesota

                                *Thomas v. Wells Fargo*
                                Case No.19-cv-482 (ECT/TNL)