## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Stella Thomas,                                   Case No. 19-cv-482 (ECT/TNL)

                Plaintiff,

v.                                                        **ORDER**

Wells Fargo Bank, N.A.,

                Defendant.

Stella Thomas, 3939 Colfax Avenue North, Minneapolis, MN 55412 (pro se Plaintiff);

Terran C. Chambers, Faegre Drinker Biddle & Reath LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55401 (for Defendant).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff's Motion to Compel (ECF No. 181). For the reasons set forth below, the Court will deny this motion.

## I. BACKGROUND

The Court previously issued an Order on June 9, 2021, which provides a detailed history of this employment discrimination litigation. (*See* June 9 Order, ECF No. 179 at 1-13.) Relevant to the motion currently before the Court, Plaintiff alleges in her Amended Complaint that she was paid less than male employees for the same work in violation of the Equal Pay Act. (ECF No. 147 at 3.) According to Plaintiff, she became a Credit Analyst after suffering discrimination while employed as an Underwriter in a separate division. (*See id.* ¶¶ 13-16.) She then alleges that she was "retaliated against by Wells

1

Fargo by not receiving a bonus that was paid to similarly situated white colleagues with the same job responsibilities as me." (*Id.* ¶ 21.)

After the June 9 Order was issued, the Court also issued a Third Amended Pretrial Scheduling Order. (ECF No. 180.) This operative scheduling order provides that fact discovery "shall be commenced in time to be completed on or before August 9, 2021." (*Id.* at 1.) This was also the deadline for filing non-dispositive motions. (*Id.* at 3.)

## II. MOTION TO COMPEL

### A. Relevant Facts

On August 9, 2021, Plaintiff filed the instant motion. Plaintiff requests an order compelling Defendant "to provide full and complete answers and responses to Plaintiff's First Set of Discovery in Consolidated Case and Request for Production of Documents No. 11, and to produce all documents requested thereby." (ECF No. 181 at 1.) Request for Production of Documents No. 11 asks for "All documents reflecting the pay schedules for Credit Analysts including but not limited to bonus opportunities." (ECF No. 182 at 1.)

This request was first served on Defendant on July 1, 2019. (*See* Ex. 4 to Chambers Decl., ECF No. 191-1 at 31.[1]) Defendant responded with the following on August 29, 2019:

> **OBJECTION:** Defendant objects to this request as vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks "all documents reflecting" "pay schedules" for credit analysts for an unlimited period of time. Defendant also objects to this request to the extent it seeks documents protected by the

---

[1] Defendant's exhibits are filed at ECF Nos. 191-1 and 191-2. Because certain exhibits are not paginated, the Court cites to all exhibits by their ECF pagination.

2

> attorney-client privilege and/or the work product doctrine.
>
> **RESPONSE:** Subject to and without waiving its objections,
> Defendant will produce documents reflecting Plaintiff's
> compensation as a credit analyst and documents reflecting
> bonus opportunities for the credit analyst position.

(Ex. 5 to Chambers Decl., ECF No. 191-1 at 39.)

On February 24, 2021,[2] Plaintiff sent an email to Defendant citing to Request for Production of Documents No. 11 and requesting the pay and bonus information for 11 individuals, whom Plaintiff identified as Small Business Administration Credit Analysts, from January 2017 through December 2019. (Ex. 6 to Chambers Decl., ECF No. 191-2 at 2; Pl.'s Exs, ECF No. 185 at 5.[3]) These individuals are: Lisa Koeblinger, Sean Anderson, Paula Reinfeld, Jerrolyn Kapellen, Peter Gorga, Komarof Revollo, Matthew Saunders, Nick O'Brien, Chris Everett, Lindsay Morrin-Ortega, and Peter Daniel. (*Id.*) Plaintiff re-forwarded this request for information to Defendant on June 11, 2021, after the Court issued the Third Amended Pretrial Scheduling Order.[4] (Ex. 6 to Chambers Decl., ECF No.

---

[2] By this point in the litigation, Plaintiff's counsel had withdrawn. Plaintiff has represented herself pro se since September of 2020. (*See* June 9 Order at 5.)

[3] Plaintiff filed 87 pages of exhibits in support of her motion. (*See* ECF Nos. 185, 185-1, 185-2.) Many of these exhibits are not delineated or labeled in any way, and there is no accompanying declaration or affidavit describing these exhibits on the record. The Court notes, however, that many of these exhibits are the same as Defendant's. (*Compare* ECF Nos. 185, 185-1, 185-2 *with* ECF Nos. 191-1 & 191-2.) Because Defendant's exhibits are more clearly labeled, the Court often cites to Defendant's exhibits. For clarity, the Court cites to Plaintiff's exhibits by ECF pagination. The Court further notes that Plaintiff filed another set of unlabeled exhibits on August 24, 2021. (ECF No. 193.) To the extent these exhibits are related to this motion (and the Court has no clear indication that they are), the Court has not considered them because they were untimely filed. *See* D. Minn. LR 7.1(b).

[4] Defendant did not originally respond to Plaintiff's February 24, 2021 request because, it argues, discovery had closed, the period to supplement discovery had closed, and the information requested by Plaintiff was not within the scope of Request for Production of Documents No. 11. (*See* Mem. in Opp'n at 6-7, ECF No. 190; *contra* Pl.'s Exs., ECF No. 185 at 10 (email arguing service of request was February, and thus the service date of the request not June 11).) On of February 24, 2021, the operative scheduling order was the Second Amended Pretrial Scheduling Order. (*See* ECF No. 120.) This scheduling order allowed limited supplemental fact discovery after the re-opening of this case, namely supplementing answers to interrogatories before December 23, 2020; Plaintiff's production of certain medical records by January 4, 2021; and the deposition of Plaintiff, which was to be completed by January 29, 2021. (*Id.* at 1.) After the consolidation of Plaintiff's two cases, the filing of her Amended Complaint, and the Court's

191-2 at 2.)  Defendant replied on June 23, 2021, stating, "Six of the individuals you have identified were not in the Credit Analyst role from 2017 to 2019 . . . Of the remaining five individuals, you were the most highly paid Credit Analyst I, [5]  earning $26.92[6] per hour." (Ex. 8 to Chambers Decl., ECF No. 191-2 at 24; *see also* Ex. 7 to Chambers Decl., ECF No. 191-2 at 7-21 (records for other individuals with certain pay information redacted).[7]) Defendant provided the pay rates for other individuals for the periods of time they served as Credit Analyst Is and stated, "Credit Analyst Is are not bonus eligible." (Ex. 8 to Chambers Decl., ECF No. 191-2 at 24.)

Plaintiff persisted in her request, responding on the same day that six individuals Defendant had omitted information about "were all Credit Analysts with Underwriter Titles.  They were paid bonuses, which were not paid to other Credit Analysts."  (*Id.* at 23.) Plaintiff stated that she had "several documents that prove" these individuals were Credit Analysts "who performed the same duties as the rest of us."  (*Id.*)  Plaintiff concluded her email by stating, "If your client continues to lie about this then you leave me no choice but to file a motion to compel."  (*Id.*)

Almost one month passed.  On July 21, Defendant followed-up with Plaintiff

---

consideration of each party's motion for sanctions and Defendant's Motion to Modify Scheduling Order, the Court ordered further "brief and efficient" fact discovery.  (June 9 Order at 23.)  As discussed above, *see supra* at 2, this fact discovery deadline was August 9, 2021.

[5] The parties use "Credit Analyst I" and Credit Analyst 1" interchangeably throughout their filings.  The parties also use Roman numerals and Arabic numerals when discussing the Underwriter positions.  The Court, when not directly quoting a document, refers to these roles with Roman numerals.

[6] Defendant subsequently corrected itself and stated that Plaintiff made $22.85 per hour.  (*See* Pl.'s Exs., ECF No. 185 at 14.)

[7] These records were produced by Defendant on July 22, 2021.  (Chambers Decl. ¶ 8, ECF No. 191.)  It would appear these same records are attached to an email Plaintiff sent to defense counsel on the same day.  (*See* Pl.'s Exs., ECF No. 185 at 32-47.)

regarding her responses to other discovery requests.  (*Id.* at 28.)   Plaintiff responded on

July 22, "I will provide the responses as soon as I receive the income and bonus documents

I've been waiting for, for over 6 months!"  (*Id.* at 27.)   Defendant responded it did not

respond to Plaintiff's February request because in its view it was untimely and that it began

working on providing responsive documents to Plaintiff's request in June after the Court

re-opened fact discovery.  (*Id.* at 26-27.)   As to the renewed request via the June 11 email,

Defendant's counsel stated in relevant part:

> I also did not state I would have the information to you by June
> 11.  When the court issued a new scheduling order extending
> the discovery period, you re-served your request on June 11.  I
> responded to you that day and told you that I would provide
> you with an update by the end of the following week.  I did so
> on June 17.  I then provided you the exact information that you
> requested on June 23, 2021.   Attached is a supplemental
> document production containing the same information.

(*Id.* at 27.)  Plaintiff responded by accusing counsel of lying, threatening to report counsel

to the "Lawyers Professional Responsibility Board," and stating again that it was her belief

that the Credit Analyst and Underwriter positions were operatively the same.  (*Id.* at 26.)

The following day, after Defendant claimed it had fully answered Plaintiff's request,

Plaintiff sent another email specifying, "Underwriter 1 and I believe 2 are Credit Analyst

roles (I need to double check on Underwriter 2)."  (*Id.* at 30.)  She further stated, "They

were given a different title in order to get a bonus, but all the individuals with the

Underwriter I titles . . . were Credit Analysts who did the exact same thing the people with

Credit Analyst positions did."  (*Id.*)  Plaintiff encouraged counsel to contact a number of

people to confirm the roles were effectively the same, including her supervisor Matt Abens.

(*Id.*; *see also id.* at 36 (July 26 email from Plaintiff to defense counsel where Plaintiff states the roles are the same and that Abens, the "Hub Manager," could confirm); Pl.'s Exs., ECF No. 185 at 54 (same email); Thomas Dep. 43:7-15, Ex. 1 to Chambers Decl., ECF No. 161-1 at 5 (stating Abens was Plaintiff's supervisor while she was a Credit Analyst I).)

Plaintiff also subsequently served upon Defendant a "First Set of Interrogatories in Consolidated Case" on July 16, 2021. (Ex. 9 to Chambers Decl., ECF No. 191-2 at 44-52.) This set of discovery requests asks for information related to the review, pay, and promotion of Matt Saunders, one of the 11 individuals originally identified by Plaintiff in the February 24 email,[8] as well as other hiring information about Underwriters Sean Anderson and Mark Carroll, two other individuals originally identified in the same email. (Ex. 9 to Chamber's Decl., ECF No. 191-2 at 51.) Defendant objected to these requests. (Ex. 10 to Chambers Decl. ECF No. 191-2 at 65-66.)

In response to Plaintiff's motion, Defendant filed a declaration signed by Abens. (Abens Decl., ECF No. 192.) Abens states that he is currently employed by Defendant Wells Fargo Bank, N.A. as a Hub Lending Manager in the Small Business Administration ("SBA") group. (Abens Decl. ¶ 1.) Abens provides that prior to mid-2017, his team consisted of five Underwriter roles, Underwriters I-V. (*Id.* ¶ 3.) Abens states that these positions "were sequential," meaning "employees with little or no experience in commercial lending typically began at the Underwriter I position and progressed through the roles as they gained experience. Generally, an employee would remain in each role for

---

[8] It would appear that Saunders worked as a Credit Analyst I from June 2017-August 2018, when he was promoted to Underwriter I. (*See* Mem. in Opp'n at 7; *see also* Ex. 7 to Chambers Decl., ECF No. 191-2 at 21.)

at least one year before gaining the experience required to advance to the next role." (*Id.*) In mid-2017 the SBA credit team added the entry-level Credit Analyst I role. (*See id.* ¶ 4.) Plaintiff was hired as a Credit Analyst I on October 13, 2017. (Ex. 3 to Chambers Decl., ECF No. 191-1 at 22; *see also* Abens Decl. ¶ 12 (stating that Plaintiff applied and was hired for that role).)

According to Abens, Credit Analyst Is, Underwriter Is, and Underwriter IIs are separate roles with separate job descriptions, job functions, and experience requirements. (*See* Abens Decl. ¶¶ 5-9.[9]) Credit Analyst Is "are compensated at the lowest level on the team and are not bonus eligible." (*Id.* ¶ 7.) Underwriters are bonus eligible. (*See id.* ¶¶ 9, 11.)

The Credit Analyst I and Underwriter I positions require similar experience. (*Compare* Ex. 1 to Abens Decl., ECF No. 192-1 at 2 (stating that the required qualifications for the Credit Analyst I role are "6+ months of financial analysis experience demonstrated through work or military experience"), *with* Ex. 2 to Abens Decl., ECF No. 192-1 at 4 (stating that the required qualifications for the Underwriter I role are "6+ months of underwriting experience, *financial analysis experience*, or a combination of both") (emphasis added).) Abens provides examples, however, that following the addition of the Credit Analyst I role in mid-2017, five individuals listed by Plaintiff in her February 24 email progressed from the Credit Analyst I position to the Underwriter I position after 14-plus months of work at the Credit Analyst I level. (*See* Abens Decl. ¶ 14 (citing five of the

---

[9] Abens's Declaration also discusses Underwriter IIIs, however Plaintiff does not allege that this role was similarly situated to the Credit Analyst I role. (*See* Ex. 8 to Chambers Decl., ECF No. 191-2 at 30.)

individuals, including Saunders).)   According to Abens, the remaining six individuals identified in Plaintiff's February 24 email joined the team prior to the creation of the Credit Analyst I position and thus were directly hired at the Underwriter level.  (*See id.* ¶ 15.)

Further, according to Abens, the job descriptions of the two positions are different. The job description for Credit Analyst I states:

> Responsible for conducting routine credit investigations on companies and industries.  Functions include: gathering and reviewing routine credit information for loans; preparing credit reports for presentation; spreading financial/credit information; monitoring and following up on credit covenants, monitoring documentation exceptions, responding to customer service inquiries; ensuring credit files are current; generating status reports for management/bankers; contacting available sources of information.

(Ex. 1 to Abens Decl., ECF No. 192-1 at 2.)  The job description for Underwriter I states:

> Responsible for reviewing small or less complex business banking, commercial, and high net worth loan packages according to business unit standards.  Functions may include: extending credit to and monitoring loan portfolios investigation, analysis and review of credit standards to determine credit worthiness; handling problem loans/workouts to determine remedies if needed; communicating underwriting decisions.  Provide customer assistance as needed.

(Ex. 2 to Abens Decl., ECF No. 192-1 at 4.)  The Underwriter II position requires more experience than the Underwriter I position and also has separate job duties.  (*See* Ex. 3 to Abens Decl., ECF No. 192-1 at 6.)  Abens states that he attempted to promote Plaintiff to the Underwriter I position after she spent approximately 14-15 months in the Credit Analyst I position, but the promotion never became effective because she resigned from her position on his team.  (*See* Abens Decl. ¶ 13.)

8

**B. Analysis**

Plaintiff states that the income and bonus information paid to Credit Analyst Is and Underwriter Is forms the basis for her Equal Pay Act claim.  (ECF No. 182 at 1.)  In support of her motion, Plaintiff argues that Credit Analyst Is and Underwriter Is have substantially similar job responsibilities and/or perform the same work.  (*See id.* at 3.)

Defendant opposes the motion, arguing that the additional pay data for the 11 individuals is not responsive to any timely served discovery request; the additional pay data is not relevant to Plaintiff's claims, nor is it proportional to the needs of the case; and the interrogatories served by Plaintiff on July 16, 2021 are untimely under the Third Amended Pretrial Scheduling Order.  (*See* Mem. in Opp'n at 9.)

The Court could deny Plaintiff's motion on timeliness alone.[10]  District courts have "very wide discretion in handling pretrial discovery."  *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) (quotation omitted).  Serving the July 16 interrogatories was untimely under the operative scheduling order because it did not give Defendant adequate time to respond by the deadline, *see* Fed. R. Civ. P. 33(b)(2), and Plaintiff has not shown good cause for modifying the scheduling order.  *See* Fed. R. Civ. P. 16(b)(4) (a scheduling order set by a court "may be modified only for good cause and with the judge's consent"); D. Minn. LR 16.3(b) (requiring a party moving to modify a scheduling order to "establish good cause for the proposed modification" and "explain the proposed modification's effect on any deadlines.").

---

[10] As discussed below, Defendant has already responded to Request for Production of Documents No. 11 by providing compensation data for the individuals that served as Credit Analyst Is during the relevant time.  *See infra* at 10-13.

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (quotation omitted).  Plaintiff has not demonstrated the requisite diligence in attempting to meet the Third Amended Pretrial Scheduling Order's requirement that all fact discovery should have been commenced to be completed by August 9, 2021.  (*See* ECF No. 180 at 1.)  Plaintiff could have served her interrogatories after she received the compensation information from defense counsel on June 23, 2021 and found that response insufficient.  Plaintiff also could have moved to modify the scheduling order prior to the fact discovery deadline.  She instead chose to serve untimely discovery requests and filed this motion at the non-dispositive motion deadline before Defendant had adequate time to respond to her requests.  This litigation has stretched on for over two years and Plaintiff has demonstrated she is capably representing herself pro se.  (*See* June 9 Order at 18 n.2 (also reminding Plaintiff that her pro se status does not exempt her from following substantive and procedural law) (citation omitted).)  The Court could thus deny Plaintiff's motion on procedural grounds alone.

Even if Plaintiff's request were timely, however, the Court would still deny her motion.  In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible to be discoverable.  *Id.*  However, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the

10

information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quotation omitted).

"The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment). "[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Vallejo*, 903 F.3d at 742 (quotation omitted). Considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d at 742-43.

Defendant has provided information that is proportional and relevant to this case—namely the compensation information for the five individuals cited by Plaintiff in the February 24 email that held the same job she held (Credit Analyst I) during the relevant time period. Plaintiff has failed to demonstrate that Credit Analyst Is and Underwriter Is (or Underwriter IIs) served substantially the same role.[11] As best as the Court can tell, the

---

[11] It would appear that Plaintiff was proposing to conduct an evidentiary hearing on this issue. (*See* ECF No. 182 at 3 ("At this point I intend to call upon some of my previous coworkers to testify regarding Credit Analysts and Underwriter 1s [sic] job responsibilities at the Motion to compel hearing instead of going back and forth with the Defendant's attorney.").) Such an evidentiary hearing is not contemplated by the local rules. *See* D. Minn. LR 7.1(b) ("Before filing a nondispositive motion, a party must contact the magistrate judge's courtroom deputy to schedule a hearing . . . . If the court cancels the hearing—whether at the parties' joint request or on its own—the parties must nonetheless file and serve their motion papers by the deadlines that would have applied if the hearing had not been canceled."); *id.* 7.1(b)(1) (requiring the moving party to file all supporting documents, including a legal

only information Plaintiff provides in support of her argument that the Credit Analyst I and relevant Underwriter positions are substantially the same are: (1) her own statements (*see, e.g.*, Pl.'s Exs., ECF 185 at 25 ("Underwriter 1 and I believe 2 are Credit Analyst roles . . . They were given a different title in order to get a bonus, but all the individuals with the Underwriter I titles . . . were Credit Analysts who did the exact same thing the people with Credit Analyst positions did."); *id.* at 26 ("If the individuals you say were business underwriters and not Credit Analysts, why would they be on a Wells Fargo Credit Analyst Production report?")); and (2) documents within Plaintiff's exhibits entitled "Credit Analyst Production," with no further description or explanation. (*Id.* at 56-70.[12])

Even assuming, however, that Plaintiff had coherently supported her argument that the positions are substantially similar, Defendant has met its burden to demonstrate the pay information for Underwriters is not relevant because those positions are in fact distinct from that of a Credit Analyst I, the position that Plaintiff held. *See St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000) ("The party resisting production bears the burden of establishing lack of relevancy or undue burden.") (citations omitted). The Abens Declaration makes clear that: Credit Analyst Is, Underwriter Is, and Underwriter IIs are separate roles within the SBA credit team; notwithstanding similar hiring prerequisites, Credit Analyst Is and Underwriter Is had distinct employment duties; Underwriter Is were either hired directly into the role prior to

---

memorandum of law, affidavits, and exhibits "simultaneously."). After this motion was fully briefed, the Court took it under advisement without oral argument. (ECF No. 194.)

[12] It does appear that these "Credit Analyst Production" documents include the names of certain individuals listed in Plaintiff's February 24 email. (*Compare* Pl.'s Exs, ECF No. 185 at 5, *with id.* at 56-70.)

the advent of the Credit Analyst I position or promoted from Credit Analyst I to Underwriter I after a period of at least 14 months; and, as such, Credit Analyst Is were not bonus eligible. (*See also* Exs. 1 & 2 to Abens Decl.)

In sum, Defendant has provided Plaintiff with relevant and proportional compensation information for Credit Analyst Is in response to Plaintiff's timely Request for Production of Documents No. 11, originally filed in February 2019 and subsequently narrowed by the parties through email communication. Defendant is not required to provide disproportional information that was untimely requested by Plaintiff via her interrogatories served on July 16, 2021. Plaintiff's motion is denied.

## III. ORDER

Therefore, based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel (ECF No. 181) is **DENIED**.

2. All prior consistent orders remain in full force and effect.

[continued on next page]

3. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: September  9 , 2021

                                                *s/Tony N. Leung*

                                      Tony N. Leung
                                      United States Magistrate Judge
                                      District of Minnesota

                                      *Thomas v. Wells Fargo*
                                      Case No.19-cv-482 (ECT/TNL)