UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Stella Thomas,                                           File No. 19-cv-482 (ECT/TNL)

      Plaintiff,

v.                                                       **OPINION AND ORDER**

Wells Fargo Bank, N.A.,

      Defendant.

---

Stella Thomas, *pro se*.

Terran C. Chambers, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN 55402, on behalf of Defendant Wells Fargo Bank, N.A.

---

      Plaintiff Stella Thomas brought this lawsuit alleging multiple instances of racial and gender discrimination and retaliation by her former employer, Defendant Wells Fargo Bank, N.A. Extensive discovery has revealed no evidence to support her claims. Wells Fargo's motion for summary judgment must therefore be granted and this case dismissed.

I

      Thomas held several different positions in Wells Fargo's mortgage- and loan-processing businesses during her almost six-year tenure at the bank. The claims in her Amended Complaint [ECF No. 147], whether for racial and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.;

wrongful termination, or unpaid overtime,[1] are most easily analyzed by the position she held during each challenged act, rather than by the statutory or other bases she invokes to support them. Accordingly, the relevant facts are incorporated into the discussion of each of Thomas's claims below.[2]

## II

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

### A

Thomas's first position at Wells Fargo was as a Consumer Phone Banker 1 in the bank's consumer lending division. Chambers Decl. Ex. 2 [ECF No. 206]. She was promoted at least twice, ultimately becoming a Consumer Loan Underwriter I. *Id.* Ex. 1 ("Thomas Dep.") at 39–40. In this position, she processed consumer mortgage loan

---

[1] Thomas appears to have abandoned her claim for allegedly unequal pay under the Equal Pay Act, 29 U.S.C. § 206(d).

[2] Unless otherwise noted, the facts are undisputed or described in a light most favorable to Thomas. Fed. R. Civ. P. 56(a).

applications. *Id.* at 40–41. Wells Fargo assigned its underwriters "points" for the loans on which they worked; the number of points an underwriter accrued determined a monthly bonus payment to which she was entitled. *Id.* at 86–88. As relevant here, an underwriter with 60 to 74 points received a bonus of ten percent of her salary; an underwriter with 75 or more points received a 14-percent bonus. Chambers Decl. Ex. 19 at WF001567. Thomas's first claim relates to what she believes was a discriminatory failure to credit her with a point for a loan on which she worked in August 2017.

Workplace discrimination is actionable only if it arises out of intentional discrimination. *See McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973) (noting one essential element of a Title VII claim is that the circumstances give rise to an inference of discrimination). "An employer is entitled to summary judgment on an employee's discrimination claim unless the employee (1) presents direct evidence of discrimination, or (2) creates a sufficient inference of discrimination under the *McDonnell Douglas* framework."[3] *Findlator v. Allina Health Clinics*, 960 F.3d 512, 514 (8th Cir. 2020). Thomas has no direct evidence of discrimination, and she must therefore rely on indirect evidence to create the inference of discrimination she claims. In other words, Thomas must

---

[3] *McDonnell Douglas* established a burden-shifting framework for the analysis of Title VII claims based on indirect evidence of discrimination. First, the employee must come forward with evidence on the elements of her prima facie case: she is a member of a protected group, she was qualified for the job, she suffered an adverse employment action, and there is a causal connection between her protected status and the adverse action. *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009). The burden then shifts to the employer to offer a legitimate, non-discriminatory reason for the action it took. *Id.* If the employer successfully advances that reason, the burden shifts back to the employee to show by a preponderance of the evidence that the proffered reason is a pretext for unlawful discrimination. *Id.*

demonstrate through indirect evidence "that the motive to discriminate was one of the employer's motives" underlying the employer's conduct, even if other, permissible motives also caused the employer to take the action it did. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013).

The undisputed facts show that the failure to credit Thomas with a point for the loan at issue was, at most, an oversight on the part of Thomas's boss, not an act of intentional discrimination. He admitted his mistake and attempted to remedy the error but was unable to do so. Chambers Decl. Ex. 21; Supp. Chambers Decl. [ECF No. 235] Ex. 47. No reasonable jury could find that this error was evidence of impermissible motive, and Thomas has not established any intentional discrimination.

Even if the failure to credit Thomas a point for this particular loan could be viewed as intentionally discriminatory, however, Thomas has not established that this failure caused her any harm. Another element of a claim under Title VII is an "adverse employment action [which] is a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). There is no dispute that Thomas's bonus would not have changed had Wells Fargo credited her with the additional point. *See* Thomas Dep. at 95 (acknowledging that she accrued 73 bonus points for August 2017). Thomas's 73 points qualified for a ten-percent bonus, and 74 points would have qualified for the same bonus. Chambers Decl. Ex. 19 at WF001567. Thomas's suggestion that the individual who tallied bonus points might have given her the 75-point bonus is pure speculation and cannot establish intentional discrimination on the part of Thomas's boss. The absence of any

4

adverse employment action is fatal to Thomas's claim of alleged discrimination during her tenure as a Consumer Loan Underwriter I.

B

In October 2017, Thomas was offered and accepted a position on Wells Fargo's Small Business Administration team. Thomas Dep at 42–43. Because the new position involved commercial lending, an area with which Thomas had no experience, she started at the entry-level position of Credit Analyst I. Thomas Dep. at 42, 194. Thomas's encounters with her new supervisors and coworkers give rise to several additional claims for discrimination and retaliation.

In June 2018, Thomas complained in an email to one of her coworkers about what she viewed as that coworker's mistreatment of their colleague, Peter Gogra, a black male. Chambers Decl. Ex. 9. Thomas copied her boss and another supervisor on this email, which ended with Thomas stating that she intended to report the issue to Wells Fargo's Human Resources department. *Id.* Thomas contacted the Human Resources department that same day, both about the alleged mistreatment of Mr. Gogra and other alleged instances of discrimination against Thomas herself. Chambers Decl. Ex. 11; *id.* Ex 10 at WF000372. According to this complaint, Thomas's boss had engaged in discriminatory file assignments, assigning incoming loan files to white male Credit Analysts while refusing to assign files to Thomas. In addition, Thomas complained that she was not allowed to attend a training called "Credit School" in the summer of 2018. Finally, Thomas asserted that she was not given a bonus when other Credit Analysts were given bonuses

and that another Credit Analyst had been promoted to Underwriter III despite having less experience than Thomas.[4]

Shortly after Thomas's Human Resources complaint, she sent an email to the executive vice president of the small-business team. Chambers Decl. Ex. 12. In this email, Thomas again complained about bonus payments and Credit School. The executive responded to Thomas, assuring her that she would contact Human Resources to look into Thomas's contentions. *Id.*

Less than six weeks later, at the end of July 2018, Thomas's boss met with her for a mid-year review. Although the review was overwhelmingly positive, Thomas's boss pointed out several areas where Thomas could improve, including avoiding conflict with coworkers and being more teamwork-oriented, especially with regard to sharing files.[5] Chambers Decl. Ex. 7. Although Thomas believed she was entitled to be promoted to the position of Underwriter I at this review, she was not promoted. After the review, Thomas sent another email to Human Resources, asserting that the alleged performance deficiencies and the failure to give her a promotion were related to the complaints she had made. Chambers Decl. Ex. 13. Wells Fargo investigated Thomas's claims but did not agree with Thomas that she had experienced discrimination or retaliation. Chambers Decl. Ex. 10.

---

[4] Thomas's communication with Human Resources also included a complaint about another one of Thomas's colleagues, but this complaint does not underlie any of Thomas's claims in this case.

[5] Thomas had directly confronted another coworker about file-sharing, in a manner her boss viewed as unprofessional. He requested that Thomas bring any concerns about file-sharing directly to him rather than confronting her colleagues. Chambers Decl. Ex. 23 at WF001622.

Thomas attempts to show the causation element of her claims with allegations that white and male individuals were treated differently than she was. *E.g.* Pl.'s Opp'n Mem. [ECF No. 214] at 12.[6] To survive summary judgment, Thomas must identify at least one other employee who was "similarly situated in all relevant aspects" but who was treated differently than she was. *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000); *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005). "[I]ndividuals used as comparators 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Gilmore v. AT & T*, 319 F.3d 1042, 1046 (8th Cir. 2005) (quoting *Clark*, 218 F.3d at 918).

Thomas has no evidence that any other individual—white, male, or otherwise—on her team was allowed to attend Credit School. In fact, Thomas's boss told her that no one could attend this training because one member of the team was out of the office on maternity leave, making the team short-staffed. Thomas Dep. at 117. This business decision is not discriminatory. Similarly, Thomas has no evidence that any other Credit Analyst I received a bonus, and the evidence establishes that Credit Analyst I was not a bonus-eligible position. Thomas Dep. at 110–12. Thomas's mere belief that the failure to allow her to go to Credit School and the failure to give her a bonus were discriminatory is not evidence that can create a dispute of material fact. The evidence demonstrates that the individuals Thomas contends were similarly situated to her were not in fact so situated, because none of the individuals were Credit Analyst Is. Chambers Decl. Ex. 40. Without

---

[6] Thomas's opposition memorandum has no page numbers, so all citations are to the page number in the Court's electronic filing system.

other circumstances giving rise to an inference of discrimination, the lack of a legally sufficient comparator warrants summary judgment in Wells Fargo's favor. *See Mervine v. Plant Eng'g Servs., LLC*, No. 14-cv-3080 (ADM/TNL), 2016 WL 1273195, at *10 (D. Minn. Mar. 31, 2016).

In addition, Thomas's claims regarding her boss transferring three loan files to other individuals—one of whom was a female—does not amount to an adverse employment action, because Thomas does not allege that she suffered any harm from this transfer. *See Spears*, 210 F.3d at 853 ("An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage"). Even if Thomas had suffered a disadvantage because of the file transfers, she has not come forward with evidence to establish any discriminatory animus with regard to any of the above-described actions, and summary judgment on her claims arising out of the file transfer, Credit School, and bonus eligibility is appropriate.

Likewise, her belief that she was entitled to a promotion less than one year into a new position is not evidence that the failure to give her such a promotion was discriminatory. Thomas points to a white male who was promoted before she was in an attempt to demonstrate the requisite discriminatory intent. But Thomas's own evidence shows that this individual had been a Credit Analyst for 18 months longer than Thomas. Thomas Ex. 67 [ECF No. 232-16]. She is not similarly situated to the promoted individual "in all relevant respects." *Ward v. Proctor & Gamble Paper Prods. Co.*, 111 F.3d 558, 560 (8th Cir. 1997). Because Thomas has no other evidence from which a jury could infer discriminatory intent, her discrimination claim arising out of this promotion fails.

Thomas also asserts that the failure to promote her was retaliatory because it occurred less than two months after she made several complaints of discrimination. To establish a prima facie case of retaliation, Thomas must come forward with evidence that she engaged in statutorily protected conduct, suffered an adverse employment action, and there is a causal connection between the two. *Turner v. Gonzales*, 421 F.3d 688, 695–96 (8th Cir. 2005). Thomas has no evidence other than temporal proximity for her belief that she did not receive the promotion because of her previous complaints. While temporal proximity may suggest an inference of retaliatory motive, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). Here, any possible inference of retaliatory motive is rebutted by evidence that no other Credit Analyst I with her qualifications and experience was promoted in less than one year. The undisputed evidence is in fact to the contrary: Wells Fargo's practice was to promote individuals after 12 or more months in a new position. Abens Decl. [ECF No. 192] at ¶ 3. Thomas had been on the job only nine months at the time of her mid-year review. No reasonable jury could find any impermissible discrimination or retaliation with regard to the failure to promote.

For all of these reasons, Thomas's claims arising out of her position in the Small Business team, whether for discrimination or retaliation, fail as a matter of law.

C

In January 2019, Thomas once again changed departments, beginning work as a Credit Analyst II in Wells Fargo's Middle Market Banking group. Chambers Decl. Ex. 6;

9

Thomas Dep. at 48–49. Because Thomas did not have experience with the larger commercial transactions that this group handled, her new position was an entry-level one. Thomas Dep. at 50–51.

In June 2019, six months into her new role, Thomas asked to be promoted to Credit Analyst III. According to Thomas's boss, Credit Analyst IIs "must serve at least one year in the role before advancing to a Credit Analyst III," and the higher position typically required at least five years of relevant credit-analyzing experience. Schneider Decl. ¶ 5 [ECF No. 207]. Thomas did not receive the promotion she sought, and a white male was hired as a Credit Analyst III on Thomas's team. This individual, however, had experience in the same role at a different bank. *Id.* ¶ 11.

Thomas again complained that she was being treated unfairly, and pointed to several of her coworkers, in addition to the new hire, as ostensible evidence that she had sufficient experience for the Credit Analyst III position. Chambers Decl. Ex. 34; Thomas Dep. at 139–140, 172. She acknowledges, however, that she does not know the qualifications of any of the individuals to whom she compared herself. Thomas Dep. at 140–43, 172. The evidence establishes that several of these individuals had multiple years' experience as Credit Analyst IIs, and others had different supervisors and thus are not proper comparators. Chambers Decl. Exs. 41, 42, Schneider Decl. ¶¶ 11–13. Human Resources investigated Thomas's complaint but did not find any discrimination in the failure to offer Thomas the promotion.[7] Chambers Decl. Ex. 34.

---

[7] Thomas's opposition memorandum mentions another allegedly retaliatory failure to promote her, claiming that she was denied a promotion to an Operational Risk Consultant 3

In April 2019, before Thomas requested a promotion, Wells Fargo received a complaint from Thomas's former boyfriend that Thomas had fraudulently transferred money out of his Wells Fargo account and into her own. Wells Fargo's Internal Investigations and Employee Relations teams investigated the complaint, and Thomas conceded to the investigators that she did not have permission to make some of the transfers she made. Chambers Decl. Ex. 39; Thomas Dep. at 216–17, 218–19. Ultimately, Wells Fargo determined that Thomas's employment should be terminated.

Thomas received notice of the termination in September 2019. Chambers Decl. Ex. 36. Thomas had filed this lawsuit in February 2019, shortly after she transferred to the Middle Market Banking group. After her termination she added claims for wrongful termination and failure to pay overtime. Am. Compl. ¶ 3.e.

The record does not support Thomas's contention that her failure-to-promote complaints led to her termination. Wells Fargo received the complaint regarding the unauthorized transfers before Thomas made any claims regarding her promotion to Credit Analyst III. Although Wells Fargo made the decision to terminate her employment after Thomas engaged in protected conduct, Thomas has no evidence to cast doubt on what is self-evidently a legitimate business decision to terminate a bank employee found to have

---

position in retaliation for her claims of discrimination. Her memorandum, however, offers no argument or facts in support of this new claim, merely stating, "I was fired while in the process of interviewing for this position. I was a finalist." Pl.'s Opp'n Mem. at 31. Thomas has not met her burden to come forward with evidence supporting this claim, and no further discussion of it is necessary.

11

engaged in fraudulent banking transactions.[8] *See Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1312 (8th Cir. 1995) ("We do not sit to determine if this reason is based on sound principles of business judgment.").

Thomas's argument that her ex-partner later told her she was entitled to the money she transferred does not render Wells Fargo's investigation of his complaint illegitimate. Thomas has no evidence that either she or her ex-partner ever informed Wells Fargo during the investigation that all of the challenged transactions were in fact authorized. Wells Fargo's decision to terminate Thomas's employment was not discriminatory or retaliatory, and summary judgment on Thomas's claims in this regard is appropriate.

Thomas's final claim is that she was not paid for overtime hours she worked. But Thomas proffers no evidence to support her allegations. It is her burden to point to evidence establishing that she worked overtime hours for which she was not compensated. *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014). "[B]are assertions" do not suffice to meet this burden. *Id.* at 1060. The only evidence in the record is that Thomas complained in June 2019 that her boss would not permit her to work overtime, not that she was being underpaid for overtime hours. Supp. Chambers Decl. [ECF No. 235] Ex. 48. No reasonable jury could determine that Thomas worked overtime hours for which she was insufficiently compensated, and Wells Fargo's motion on this claim must be granted.

---

[8]  Thomas appears to believe that she should have faced termination only if she used her position as a Wells Fargo employee to accomplish the unauthorized transactions, but it is undoubtedly within Wells Fargo's legitimate expectations that a bank employee will not engage in any unauthorized banking transactions, whether or not those transactions require account access that only an employee would have.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment [ECF No. 203] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 11, 2022                           s/ Eric C. Tostrud
                                                 Eric C. Tostrud
                                                 United States District Court